**THIS OPINION HAS NO PRECEDENTIAL VALUE. IT SHOULD NOT BE CITED OR RELIED ON AS PRECEDENT IN ANY PROCEEDING EXCEPT AS PROVIDED BY RULE 268(d)(2), SCACR.**

**THE STATE OF SOUTH CAROLINA**
**In The Court of Appeals**

Jane Elizabeth Vohringer, Appellant,

v.

Robert C. Watford and Watford's Wrecker Service, Inc., Respondents.

Appellate Case No. 2023-001308

———

Appeal From Georgetown County
William H. Seals, Jr., Circuit Court Judge

———

Unpublished Opinion No. 2026-UP-333
Heard February 11, 2026 – Filed July 1, 2026

———

**AFFIRMED**

———

Jeffrey Ryan Heiskell, of Bell Legal Group, of Georgetown; and Joseph Clay Hopkins, of Charleston, both for Appellant.

Richard Wayne Simmons, II, of Speed, Seta, Martin, Trivett & Stubley, LLC, of Columbia, for Respondents.

———

**PER CURIAM:** Jane E. Vohringer appeals the trial court's order denying her motion for new trial, new trial nisi additur, and new trial absolute. On appeal, Vohringer argues the trial court (1) abused its discretion in finding certain expert

testimony reliable, (2) erred in failing to hold a punitive damages phase of trial, and (3) erred in failing to order a new trial nisi additur based on statements made during closing arguments. We affirm.

## FACTS/PROCEDURAL HISTORY

This matter stems from a 2019 car accident between Vohringer and Watford. Vohringer filed a complaint in the trial court, raising causes of action for negligence against Watford and Watford's Wrecker Service, Inc. (collectively, Watford) and seeking damages, including punitive damages. The case proceeded to trial.

Prior to trial, Vohringer filed a motion in limine to exclude testimony from two of Watford's expert witnesses, Marc Paradiso, a registered professional engineer, and Dr. Ian Campbell, a biomechanical engineering consultant. The trial court denied the motion and allowed both experts to testify.

Following trial, the jury returned a verdict in favor of Vohringer for actual damages in the amount of $30,000. Vohringer filed a motion for new trial, new trial nisi additur, and new trial absolute. The trial court denied the motion. This appeal followed.

## ISSUE ON APPEAL

Did the trial court err in denying Appellant's motion for new trial, new trial nisi additur, and new trial absolute?

## STANDARD OF REVIEW

"On appeal, the appellate court reviews a denial of a new trial motion for an abuse of discretion." *Kunst v. Loree*, 424 S.C. 24, 38, 817 S.E.2d 295, 302 (Ct. App. 2018) (quoting *Duncan v. Hampton Cnty. Sch. Dist. No. 2*, 335 S.C. 535, 547, 517 S.E.2d 449, 455 (Ct. App. 1999)). "In determining whether the [trial] court erred in denying a motion for a new trial, the appellate court must consider the testimony and reasonable inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Id.* "An abuse of discretion occurs when the trial court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions." *Stokes-Craven Holding Corp. v. Robinson*, 416 S.C. 517, 536, 787 S.E.2d 485, 495 (2016).

## LAW/ANALYSIS

## I. Expert Testimony

"The decision to admit or exclude testimony from an expert witness rests within the trial court's sound discretion." *State v. Makins*, 433 S.C. 494, 500, 860 S.E.2d 666, 670 (2021) (quoting *State v. Price*, 368 S.C. 494, 498, 629 S.E.2d 363, 365 (2006)). "The trial court's decision to admit expert testimony will not be reversed on appeal absent an abuse of discretion." *Id.* (quoting *Price*, 368 S.C. at 498, 629 S.E.2d at 365).

"If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, SCRE. In determining whether to admit an expert witness, the trial court must make three preliminary findings: (1) "the subject matter is beyond the ordinary knowledge of the jury," (2) the expert has "acquired the requisite knowledge and skill to qualify as an expert in the particular subject matter," and (3) whether the substance of the testimony is reliable. *See Watson v. Ford Motor Co.*, 389 S.C. 434, 446, 699 S.E.2d 169, 175 (2010). "Expert testimony is not admissible unless it satisfies all three requirements . . . ." *Id.*

### A. Paradiso's Testimony

Vohringer argues Paradiso's testimony on the change in velocity of Vohringer's vehicle was unreliable because it was subjective and did not rely on sufficient evidence or facts. She contends Paradiso's testimony did not satisfy the factors found in *State v. Council*.[1] We disagree.

"In South Carolina, a trial court minding the Rule 702 gate must assess not only (1) whether the expert's method is reliable (i.e., valid), but also (2) whether the substance of the expert's testimony is reliable." *State v. Warner*, 430 S.C. 76, 86, 842 S.E.2d 361, 365 (Ct. App. 2020). "The substance of an expert's testimony is reliable if it adheres to the rigors of the method." *Id.* at 86, 842 S.E.2d at 366. "As long as the trial court is satisfied the expert's testimony consists of a reliable method faithfully and reliably applied, the gate of admissibility should be opened." *Id.* at 86–87, 842 S.E.2d at 366. "The correctness of the conclusion reached by an expert's faithful application of a reliable method . . . is for the jury, for the trial

---

[1] 335 S.C. 1, 515 S.E.2d 508 (1999).

judge must remain at the gatepost and not tread on the advocate's or the jury's turf." *Id.* at 87, 842 S.E.2d at 366.

> "In considering the admissibility of scientific evidence . . . the [trial c]ourt looks at several factors, including: (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures."

*Council*, 335 S.C. at 19, 515 S.E.2d at 517.

During the proffer of his testimony at trial, Paradiso explained he used a standardized test from the Insurance Institute for Highway Safety (IIHS) and compared data from that test to the energy and damage in Vohringer's vehicle. He testified he used this comparison along with his engineering knowledge to ultimately determine the change in velocity for Vohringer's vehicle. We hold the trial court did not abuse its discretion in finding Paradiso's testimony to be reliable because there was sufficient evidence to establish that his testimony satisfied the *Council* factors. *See Makins*, 433 S.C. at 500, 860 S.E.2d at 670 ("The decision to admit or exclude testimony from an expert witness rests within the trial court's sound discretion."); *Stokes-Craven Holding Corp.*, 416 S.C. at 536, 787 S.E.2d at 495 ("An abuse of discretion occurs when the trial court's order is controlled by an error of law or when there is no evidentiary support for the trial court's factual conclusions."). Paradiso demonstrated his method was reliable by pointing to publications and peer review, explaining that his method was reliable and customarily and regularly used in the field, and that it was consistent with physics and engineering principles. Further, Paradiso demonstrated he utilized quality control methods by "putting a bound on [his] calculation." As such, we hold the trial court did not err. *See Council*, 335 S.C. at 19, 515 S.E.2d at 517 ("In considering the admissibility of scientific evidence . . . the [trial c]ourt looks at several factors, including: (1) the publications and peer review of the technique; (2) prior application of the method to the type of evidence involved in the case; (3) the quality control procedures used to ensure reliability; and (4) the consistency of the method with recognized scientific laws and procedures.").

While Vohringer emphasizes that Paradiso did not know the speed of the vehicles, Paradiso explained both during the proffer of his testimony and to the jury that he did not need to know the speed or velocity of either vehicle to arrive at his

conclusion. He stated he only needed to know the change in velocity. Additionally, we underscore that beyond the trial court's determination that an expert witness' testimony is reliable, it is for the jury to decide whether the expert's opinion is ultimately correct as well as the weight to be given to it. *See Warner*, 430 S.C. at 87, 842 S.E.2d at 366 ("The correctness of the conclusion reached by an expert's faithful application of a reliable method . . . is for the jury, and the trial judge must remain at the gatepost and not tread on the advocate's or the jury's turf.").

### B.     Dr. Campbell's Testimony

Vohringer argues that because Dr. Campbell's testimony was dependent on Paradiso's testimony, Dr. Campbell's testimony was also unreliable.

"In most cases, making a motion in limine to exclude evidence at the beginning of trial does not preserve an issue for review because a motion in limine is not a final determination." *State v. Wood*, 362 S.C. 520, 526, 608 S.E.2d 435, 438 (Ct. App. 2004). "Thus, the moving party must make a contemporaneous objection when the evidence is introduced." *Id.* This requirement does not apply, however, when the trial court makes a ruling on the admission of the evidence "immediately prior" to the introduction of the subject evidence. *Id.* at 526–27, 608 S.E.2d at 439 (quoting *State v. Forrester*, 343 S.C. 637, 642, 541 S.E.2d 837, 840 (2001)).

We find this question is unpreserved for our review. Although Vohringer raised her arguments about Dr. Campbell's testimony in both her motion in limine and during the motion hearing, Vohringer did not contemporaneously object to Dr. Campbell's admission as an expert witness. We note that the motion hearing took place well before Dr. Campbell was presented as an expert.[2] Additionally, Vohringer did not object to Dr. Campbell's testimony as it was given on the basis that it was unreliable due to its reliance on Paradiso's previous testimony. Therefore, we find this question unpreserved. *See Wood*, 362 S.C. at 526, 608 S.E.2d at 438 ("[M]aking a motion in limine to exclude evidence at the beginning of trial does not preserve an issue for review . . . . [T]he moving party must make a contemporaneous objection when the evidence is introduced.").

## II.     Punitive Damages

---

[2] Four witnesses testified after the motion hearing and prior to Dr. Campbell's testimony.

Vohringer contends the trial court erred in failing to hold a punitive damages phase following bifurcation.  We disagree, but we ultimately find this question is unpreserved for our review.

Vohringer never raised the issue of punitive damages or bifurcation during trial in her opening statement, the evidence phase, or closing statement, nor did she object to the jury charges, which did not include a charge on punitive damages. Therefore, this question is not preserved for our review.  *See Wilder Corp. v. Wilke*, 330 S.C. 71, 76, 497 S.E.2d 731, 733 (1998) ("It is axiomatic that an issue cannot be raised for the first time on appeal, but must have been raised to and ruled upon by the trial judge to be preserved for appellate review.").[3]

### III.    New Trial Nisi

Vohringer argues the trial court erred in failing to order a new trial nisi additur based on statements made by opposing counsel during closing arguments.  She further contends the jury's award was inadequate based on the undisputed medical evidence.

#### A.    Improper Statement

We first note that Vohringer did not object to Watford's alleged improper statement during closing arguments referencing an emergency room bill that was not in evidence, nor did Vohringer discuss the statement during her reply.  Therefore, to the extent Vohringer now objects to that statement, we find this issue is not preserved for our review.  *See Turner v. Medical Univ. of S.C.*, 430 S.C. 569, 590, 846 S.E.2d 1, 12 (Ct. App. 2020) ("A contemporaneous objection is required to preserve issues for appellate review.").

Regardless, we find the trial court properly found Vohringer opened the door to Watford's comment regarding the emergency room bill in both her opening and closing statements by suggesting the jury ask how much the case was worth.  *See*

---

[3] However, even if preserved, neither party disputes that Watford did not request bifurcation.  As such, we note the statute relied on by Vohringer is not applicable. *See* S.C. Code Ann. § 15-32-520(A) (Supp. 2025) ("All actions tried before a jury involving punitive damages, *if requested by any defendant against whom punitive damages are sought*, must be conducted in a bifurcated manner before the same jury." (emphasis added)).  This statute plainly does not require bifurcation apart from a defendant's request.

*State v. Page*, 378 S.C. 476, 482, 663 S.E.2d 357, 360 (Ct. App. 2008) ("[O]therwise inadmissible evidence may be properly admitted when opposing counsel opens the door to that evidence."); *id.* ("Whether a person opens the door to the admission of otherwise inadmissible evidence during the course of a trial is addressed to the sound discretion of the trial [court]."). Further, we underscore that Watford's counsel did not state the amount of the emergency room bill in his closing statement but merely indicated he believed his estimate would include the emergency room visit and the "initial stuff." The trial court also instructed the jury to consider only the evidence in the record and witness testimony. We therefore conclude the statement about the emergency room bill is not a sufficient basis on which to grant a new trial.

### B.     Adequacy of the Verdict

"Motions for a new trial on the ground of inadequacy of the verdict are addressed to the sound discretion of the trial [court], subject to review on appeal as to whether there has been an abuse of discretion amounting to an error of law." *Patterson v. Reid*, 318 S.C. 183, 185, 456 S.E.2d 436, 438 (Ct. App. 1995). "When a party moves for a new trial based on a challenge that the verdict is either excessive or inadequate, the trial judge must distinguish between awards that are merely unduly liberal or conservative and awards that are actuated by passion, caprice, or prejudice." *Allstate Ins. v. Durham*, 314 S.C. 529, 530, 431 S.E.2d 557, 558 (1993) (footnote omitted). "While the trial court may not impose its will on a party by substituting its judgment for that of the jury, the court may give the party an option in the way of additur or, in the alternative, a new trial." *Waring v. Johson*, 341 S.C. 248, 257, 533 S.E.2d 906, 911 (Ct. App. 2000). "The consideration of a motion for a new trial nisi additur requires the court to consider the adequacy of the verdict in light of the evidence presented." *Id.* "A new trial nisi additur may be ordered when the verdict is merely insufficient based on the evidence." *Id.* "The trial judge who heard the evidence and is more familiar with the evidentiary atmosphere at trial possesses a better-informed view of the damages than this [c]ourt." *Id.* "Accordingly, great deference is given to the trial judge." *Id.*

We hold the trial court did not abuse its discretion by denying Vohringer's motion for new trial because the record contains evidence to support the jury's award. *See Patterson*, 318 S.C. at 185, 456 S.E.2d at 438 ("Motions for a new trial on the ground of inadequacy of the verdict are addressed to the sound discretion of the trial [court] . . . ."); *Waring*, 341 S.C. at 257, 533 S.E.2d at 911 ("A new trial nisi additur may be ordered when the verdict is merely insufficient based on the evidence."). We first note that none of the medical records or bills are included in

the record on appeal; thus, we are unable to determine the true cost of Vohringer's injuries aside from her own testimony and the testimony from Trica Young and Lyndsay Moore. *See Boozer v. Boozer*, 300 S.C. 282, 283, 387 S.E.2d 674, 675 (Ct. App. 1988) ("None of the medical bills testified to . . . appear in the record, and it is impossible to determine from the record what portion of the total medical bills the jury disallowed."). Further, we note the trial testimony establishes that Vohringer had migraine issues prior to the collision, and Dr. White even expressed agreement that it was possible Vohringer's cognitive and migraine conditions developed prior to the collision. Additionally, Dr. Campbell indicated Vohringer's injuries were not consistent with the severity of the collision. Watford also testified he checked on Vohringer right after the crash and recalled no physical injuries and that she seemed okay. We highlight that the jury is tasked with discerning witness credibility. *See Vinson v. Hartley*, 324 S.C. 389, 411–12, 477 S.E.2d 715, 727 (Ct. App. 1996) ("[C]redibility of witnesses [is] for the jury to determine. The jury could have determined that the medical bills testified to by [appellant] were not the result of the accident which gave rise to this suit."). Therefore, we hold the trial court did not abuse its discretion.

Based on the foregoing, the order of the trial court is

**AFFIRMED.**

**WILLIAMS, C.J., and KONDUROS and VINSON, JJ., concur.**